# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YOCHEVED SHMUELY, et al | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | NO. 17-cv-01684-RAL |
| TRANSDERMAL SPECIALTIES, | : | |
| INC. et al | : | |
| Defendants. | : | |

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

On September 10, 2018, the plaintiffs filed a motion to enforce the settlement agreement that the parties had entered into. *See* Doc. No. 43. The plaintiffs alleged that the defendants breached the settlement agreement by failing to pay $120,000 by August 31, 2018. *Id.* They requested that the Court enter an order directing the defendants to pay the settlement amount, along with prejudgment interest and attorneys' fees related to the filing of the motion to enforce. *Id.*

After considerable negotiation occurred in this and a related case, by Order of May 21, 2019, I granted the plaintiffs' motion to enforce the settlement, and provided relief directing payment of the settlement amount, prejudgment interest, and attorneys' fees. Doc. No. 63. By separate order the same day, I scheduled a hearing for June 4, 2019. Doc. No. 64. Mr. Redding did not show up for the hearing and did not contact my chambers to explain why he did not. By Order of June 10, 2019, I directed Bruce K. Redding, Jr., to file an affidavit explaining why he failed to appear at the motion hearing scheduled for June 4, 2019. Doc. No. 67. Mr. Redding has failed to supply the affidavit on or before June 18, 2019, as commanded. The Order was mailed to Mr. Redding at his last known address. It was

returned undeliverable by the U.S. Post Office. Doc. No. 70. It was mailed again to an updated address on June 27, 2019. *Id.* (unnumbered entry following Doc. No. 70). To date there has been no response by Mr. Redding.

Plaintiffs' Memorandum of Law in Further Support of Plaintiffs' Request to Hold Defendants in Contempt (Doc. No. 66) explains Mr. Redding's various failures to abide by my orders. I directed plaintiffs' counsel to supply additional information by my Order of June 17, 2019. *See* Doc. No. 68. Plaintiffs' counsel complied by letter on June 24, 2019, which is attached as an exhibit to this Order. The plaintiffs' letter of June 24, 2019, details the ways in which Mr. Redding and the other defendants have failed to comply with my previous orders. *Id.*[1]

As plaintiffs' letter of June 24, 2019 reveals, the defendants have not provided any financial statements affirmed under oath, any financial statements certified by an accountant as having been prepared in accordance with generally accepted accounting principles, or any affidavit concerning the defendants' efforts to obtain financing to pay the defendants' settlement obligation of $120,000.

The defendants have filed nothing to suggest that they do not owe the money they agreed to pay under the settlement agreement. The defendants have filed nothing to suggest

---

[1] I ordered the defendants to file certain financial documents, prior to a show cause hearing that was scheduled for November 30, 2018. *See* Doc. Nos. 47, 49, 52. Each of the defendants was ordered to file on the docket "complete and up-to-date financial statements showing their a) current assets and liabilities, b) their current income and expenses, and c) their assets, liabilities, income, and expenses for the one-year period August 31, 2017 to August 31, 2018." Doc. No. 49. These documents were "to include, but not be limited to, an income statement or like document which includes all itemized expenditures made by Defendants through November 15, 2018." *Id.* These itemized expenditure lists were to "include the date of each expenditure, its recipient, and the amount of the expenditure." All of the financial statements were to be "affirmed under oath by the defendants, who shall also provide a certification from an accountant that the financial statements have been prepared in accordance with generally accepted accounting principles." *Id.* Finally, Defendant Bruce K. Redding, Jr., was ordered to file an affidavit "detailing the precise time-line and nature of each of the defendants' efforts to obtain financing to pay the settlement obligation" and explaining "why the defendants' assets have not been liquidated in order to pay the settlement obligation." *Id.*

that the plaintiffs' calculation of attorneys' fees and costs, together with interest, is incorrect. *See* Doc. No. 66-1, at 2. I find that the defendants owe the money they agreed to pay, and that plaintiffs' claims for attorneys' fees and interest are appropriate. I will discuss the issue whether the defendants, particularly Mr. Redding, are in contempt of court, and if so, what remedy I should impose.

## DISCUSSION

Contempt authority has been conferred upon magistrate judges by statute. *See* 28 U.S.C. § 636(e).[2] Section 636(e)(4) addresses civil contempt authority in consent cases:

> In any case in which a United States magistrate judge presides with the consent of the parties under subsection (c) of this section, and in any misdemeanor case proceeding before a magistrate judge under section 3401 of title 18, *the magistrate judge may exercise the civil contempt authority of the district court*. This paragraph shall not be construed to limit the authority of a magistrate judge to order sanctions under any other statute, the Federal Rules of Civil Procedure, or the Federal Rules of Criminal Procedure.

28 U.S.C. § 636(e)(4) (emphasis added); *see also Wallace v. Kmart Corp.*, 687 F.3d 86, 91–92 (3d Cir. 2012) (recognizing that magistrate judges are authorized to "'exercise the civil contempt authority of the district court' in civil cases where the magistrate judge is presiding by consent of the parties pursuant to 28 U.S.C. § 636(c)" (quoting 28 U.S.C. § 636(e)(4)).

---

[2] This section of the statute was revised, effective November 13, 2000. The current version of the statute expanded the magistrate judges' contempt authority, especially in civil consent cases. *See* WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3066.

3

The parties consented to the jurisdiction of a magistrate judge for all proceedings and entry of final judgment, pursuant to 28 U.S.C. § 636(c). *See* Doc. No. 37 (reference order). Accordingly, I have the same civil contempt authority as a district judge.[3]

A district court has the "inherent power to enforce compliance with their lawful orders through civil contempt.'" *Spallone v. United States*, 493 U.S. 265, 276 (1990) (quoting *Shillitani v. United States*, 384, U.S. 364, 370 (1996)); *see also Schutter v. Herskowitz*, No. 07-3823, 2008 WL 4822012, at *4 (E.D. Pa. Nov. 6, 2008) (Strawbridge, J.). To hold an individual in civil contempt,[4] the court must find that "(1) a valid court order existed, (2) the [individual] had knowledge of the order, and (3) the [individual] disobeyed the order." *John T. ex. rel. Paul T. v. Del. Cty. Intermediate Unit*, 318 F.3d 545, 552 (3d Cir. 2003) (quoting *Harris v. City of Phila.*, 47 F.3d 1311, 1326 (3d Cir. 1995)); *see also Lawn Doctor, Inc. v. Rizzo*, 646 F. App'x 195, 199 n.4 (3d Cir. 2016) (not precedential). These elements must be proven by clear and convincing evidence. *Robin Woods Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994) (citing to *Quinter v. Volkswagen of America*, 676 F.2d 969,

---

[3] The order approving the settlement and dismissing the case with prejudice (which had been submitted by the parties) extended jurisdiction over the matter "for a period of 90 days from the date of this Order solely for the purpose of ensuring that the parties have consummated the terms of the settlement agreement." *See* Doc. No. 40. Plaintiffs' motion to enforce the settlement agreement was filed well within this ninety-day period. *See* Doc. No. 40 (dismissal order dated August 3, 2018); Doc. No. 43 (motion to enforce filed September 10, 2018). A district court may retain jurisdiction to enforce a settlement agreement, after dismissing the case pursuant to Fed. R. Civ. P. 41(a)(1)(ii), if the terms of the agreement are made part of the dismissal order or if the dismissal order specifies a retention of jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381-82. (1994). As part of the relief I grant in this case, I will treat the motion to enforce settlement to also be a motion to modify the dismissal order to retain jurisdiction to ensure continued compliance with the settlement agreement. There should be no question of jurisdiction over future, related motions/requests that will be filed beyond the ninety-days. *See Villare v. Geico Cas. Co.*, No. 14-2288, 2015 WL 1312386, at *1 (E.D. Pa. March 23, 2015) (Baylson, J.) (when granting a motion to enforce a settlement agreement that was filed within ninety days of the dismissal order, the court vacated the order of dismissal and retained jurisdiction over the matter "until the parties report that the settlement has been concluded," because the parties were disputing the terms of their settlement agreement).

[4] "Due process requires 'notice and a hearing before a finding of contempt is made and before the imposition of contempt sanctions so that the parties have an opportunity to explain the conduct deemed deficient and that a record will be available to facilitate appellate review.'" *Pasternack v. Klein*, No. 14-2275, 2017 WL 1508970, at *2 (E.D. Pa. April 27, 2017) (quoting *Harris v. City of Phila.*, 47 F.3d 1311, 1322 (3d Cir. 1995)). Mr. Redding has had ample due process. He has elected not to engage in that process. That was an unwise choice, but it was decidedly his.

4

974 (3d Cir. 1982)). The petitioning party has the burden in civil contempt proceedings. *Lawn Doctor, Inc.*, 646 F. App'x at 201 (citing to *Howard Johnson Co., Inc. v. Khimani*, 892 F.2d 1512, 1516 (11th Cir. 1990)).

While "good faith is not a defense to civil contempt," *see Robin Woods Inc.*, 28 F.3d at 399, an inability to comply or an ambiguity in the court order may excuse noncompliance. *See United States v. Rylander*, 460 U.S. 752, 757 (1983) ("Where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action."); *Robin Woods Inc.*, 28 F.3d at 399 ("[T]here is a 'longstanding salutary rule in contempt cases that ambiguities and omissions in orders redound to the benefit of the person charged with the contempt.'" (quoting *Eavenson, Auchmuty & Greenwald v. Holtzman*, 775 F.2d 535, 544 (3d Cir. 1985)).

"It is well-settled that impossibility of performance is a valid defense to a motion for contempt and that a party cannot be held in contempt for failure to obey a sanctions order if he lacks financial ability to comply with that order." *Goddard Systems, Inc. v. Tyson*, No. 07-5372, 2009 WL 2058729, at *3 (E.D. Pa. July 8, 2009) (Hart, J.) (quoting *Loftus v. Southeastern Pa. Transp. Authority*, 8 F. Supp. 2d 464, 468 (E.D. Pa. 1998)). The party raising this defense has the burden of providing "adequate proof" of an inability to pay. *See id.* (citing to *Harris*, 47 F.3d at 1324, and *Loftus*, 8 F. Supp. 2d at 469). Furthermore, unless unable to pay any amount, the party "must comply to the extent that his finances allow him." *Id.* (citing to *Loftus*, 8 F. Supp. 2d at 469).

The underlying purpose of civil contempt sanctions is twofold: (1) "to coerce the defendant into compliance with the court's order," and (2) "to compensate for losses

sustained by the disobedience."[5] *Robin Woods Inc.*, 28 F.3d at 400 (quoting *McDonald's Corp. v. Victory Investments*, 727 F.2d 82, 87 (3d Cir. 1984)); *see also Willy v. Coastal Corp.*, 503 U.S. 131, 139 (1992) ("Civil contempt is designed to force the contemnor to comply with an order of the court . . . ."). The district court has "wide discretion in fashioning a remedy." *Robin Woods, Inc.*, 28 F. 3d at 399 (quoting *Delaware Valley Citizens' Council v. Pennsylvania*, 678 F.2d 470, 478 (3d Cir. 1982)).

Sanctions may include an award that "seeks to make reparation to the injured party and restore the parties to the position they would have held had the injunction been obeyed."[6] *Lawn Doctor, Inc.*, 646 F. App'x at 200 (internal quotation marks omitted) (quoting *Robin Woods Inc.*, 28 F.3d at 400). The compensatory award may not exceed "the actual loss suffered by the party that was wronged." *Robin Woods Inc.*, 28 F.3d at 401 (quoting *Elkin v. Fauver*, 969 F.2d 48, 52 (3d Cir. 1992)).

Civil contempt sanctions may also be "designed to aid the plaintiff by bringing a defiant party into compliance with the court order or by assuring that a potentially contumacious party adheres to an injunction *by setting forth in advance the penalties the court will impose* if the party deviates from the path of obedience.'"[7] *Schutter*, 2008 WL 4822012, at *4 (quoting *McDonald's Corp.*, 727 F.2d at 87) (emphasis in original).[8] When

---

[5] By contrast, criminal contempt sanctions are meant to be punitive. *Int'l Union v. Bagwell*, 512 U.S. 821, 827 –28 (1994) ("[A] contempt sanction is considered civil if it 'is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court.'" (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441 (1911)).
[6] For example, this may include attorneys fees and costs related to bringing the contempt motion. *See Goddard*, 2009 WL 2058729, at *3.
[7] This may be a daily fine for noncompliance. *Int'l Union*, 512 U.S. at 829 ("Like civil imprisonment, such fines exert a constant coercive pressure, and once the jural command is obeyed, the future, indefinite, daily fines are purged.")..
[8] "The Supreme Court of the United States has concluded that 'penalties designed to compel future compliance with a court order[] are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard.'" *Schutter*, 2008 WL 4822012, at *4 (quoting *Int'l Union*, 512 U.S. at 827).

crafting a coercive sanction, the court must consider "the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *United States v. United Mine Workers of America*, 330 U.S. 258, 304 (1947). The Third Circuit has cautioned that the "least coercive sanction (e.g., a monetary penalty) reasonably calculated to win compliance with its orders" should be implemented. *Pasternack v. Klein*, No. 14-2275, 2017 WL 1508970, at *2 (E. D. Pa. April 27, 2017) (quoting *Matter of Grand Jury Impaneled Jan. 21, 1975*, 529 F.2d 543, 551 (3d Cir. 1976)). If ineffective, the sanctions may be increased or changed. *Id.* In *Pasternack*, Judge Schiller commented that a fine between "$100 and $1,000 per day is often used to coerce compliance with court orders." *Id.* (collecting cases).

## CONCLUSIONS

I find that entry of judgment in the amount of $120,000, the settlement amount, is appropriate, as there is no genuine issue of material fact that the defendants owe the money under the settlement agreement. *See* Fed. R. Civ. Pro. 56. I find that an award of pre-judgment interest in the amount of 6% per annum on $120,000 from the date of the settlement agreement until the date of judgment, together with post-judgment interest at the statutory rate, *see* 28 U.S.C. § 1961, also is appropriate.

I find that the plaintiffs have incurred substantial attorneys' fees and costs in their effort to overcome Mr. Redding's variegated contempt. I find that an award in the amount of $20,468.75, payable to William J. Brennan, IV, and of $13,500, payable to Stephanie J. Mensing, in compensation for attorneys' fees and costs expended in enforcement of the settlement agreement and overcoming Mr. Redding's contempt is justified. I will include the attorneys' fee award in the judgment entered in this case and order that post-judgment interest accrue on the attorneys' fee award as well as the judgment amount.

I find that Mr. Redding is in contempt of court for failure to supply financial information in accordance with my Order of November 18, 2018 (Doc. No. 49). I find that he is in contempt for failure to attend the Show Cause Hearing on June 4, 2019. I find that the evidence establishes clearly and convincingly that both Orders were valid, that Mr. Redding had knowledge of both Orders, and that he disobeyed both Orders. *See Del. Cty. Intermediate Unit*, 318 F.3d at 552 (elements); *Robin Woods Inc.,* 28 F.3d at 399 (clear and convincing standard). I find that these actions have deliberately frustrated the inquiry into whether Mr. Redding or any of the defendants have the financial wherewithal to pay the settlement amount. I find that the contempt in failing to provide financial information and attend the hearing designed to inquire into why he failed to provide financial information means that Mr. Redding and the other defendants have not borne their burden of providing adequate proof of an inability to pay. *See Harris*, 47 F.3d at 1324.

I further find that Mr. Redding's contempt is strong evidence that Mr. Redding does have the means to comply with the settlement agreement. A refusal to comply with court ordered financial disclosures, and failure to attend a hearing designed to get to the bottom of this refusal, demonstrate that Mr. Redding has a powerful motive for non-compliance with clear, simple court ordered obligations designed to discover what money was available to satisfy the settlement agreement. The reasonable inference is that truthful and complete compliance would reveal Mr. Redding's – and the other defendants' – income and assets, and subject them to collection efforts by the plaintiffs. *See Jutrowski v. Township of Riverdale*, 904 F.3d 280, 292 (3d Cir. 2018) ("'the trier of fact generally may receive the fact of … nonproduction or destruction [of relevant materials] as evidence that the party that has prevented production did so out of the well-founded fear that the contents would harm him[]'") (quoting from *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334

(3d Cir. 1995)); *cf. In re Suprema Specialties, Inc. Securities Litigation*, 438 F.3d 256, 278-279 (3d Cir. 2006) (control of all book-keeping and preventing the accounting staff from having contact with specific customers permitted an inference of intent to defraud); *United States v. Jackson*, 886 F.2d 838, 845–46 (7th Cir. 1989) (refusal to comply with a lawful court order is admissible as evidence of consciousness of guilt) (quotations and citations omitted); *United States v. Hernandez-Miranda,* 601 F.2d 1104, 1106 (9th Cir. 1979) (failure to appear at a hearing permits an inference of consciousness of guilt); *United States v. Ritch,* 583 F.2d 1179, 1181 (1st Cir. 1978) (failure to appear at a hearing is admissible as evidence of consciousness of guilt).

Finally, I attribute all of Mr. Redding's actions not only to himself and his own contumacy, but also to the several entities named as defendants in this action, all of whom are creatures of Mr. Redding's caprice and subject to his control, and on whose behalf Mr. Redding purported to act throughout this litigation.

It is therefore on this 10th day of July, 2019, **ORDERED** as follows:

1. Unless either party files an objection, I will enter judgment against the defendants, by separate document, on July 23, 2019, in the amount of $120,000, the settlement amount, plus pre-judgment interest in the amount of 6% per annum through the date of judgment, and post-judgment interest at the rate set forth under 28 U.S.C. § 1961.
2. In addition, the judgment amount will include an award of attorneys' fees and costs in the amount of $20,468.75 payable to William J. Brennan, IV, and $13,500 payable to Stephanie J. Mensing, with post-judgment interest at the statutory rate to accrue on the attorneys' fee awards as well as the $120,000.
3. I find that Mr. Redding is in willful contempt of court. As a consequence I impose a sanction of $500 per day for every day the amounts set forth in paragraphs 1 and 2,

above, are not paid in full, or Mr. Redding complies fully and completely with his financial disclosure obligations and demonstrates to my satisfaction that he and the other defendants have no ability to pay the settlement amount. Sanctions will begin July 24, 2019, and continue until I find that all amounts due and owing the plaintiffs are paid in full, or that the defendants have demonstrated an inability to pay the amounts due and owing. The sanction shall be paid to the Clerk of Court. The daily sanction will commence whether judgment is entered on July 23, 2019 or not, unless I order otherwise.

4. Mr. Redding may at any time file and serve a motion to modify or vacate this Order along with an affidavit of compliance detailing Mr. Redding's satisfaction of all his obligations, or his inability to do so. The plaintiffs will file a response to Mr. Redding's motion within 10 days of filing and service.

5. Failure to pay the financial sanctions and to otherwise cure his contempt may expose Mr. Redding to additional sanctions. Those sanctions may include but are not limited to additional monetary sanctions and incarceration until he decides to comply with Court orders. *See United States v. Harris*, 582 F.3d 512, 520 (3d Cir. 2009) (affirming continued incarceration for civil contempt; "Harris has made the choice to do what he is doing, a choice which thumbs its nose at the District Court's authority. The order of contempt seeks to coerce him into making a different choice—which is precisely the justification for and purpose of civil contempt.").

6. The plaintiffs' motion to enforce settlement is deemed also to be a motion to modify the dismissal order to retain jurisdiction to ensure continued compliance with the settlement agreement. The dismissal order is so modified, and I will retain jurisdiction

over this case to ensure the enforcement of previous Orders, of this Order, and of the Judgment entered pursuant to this Order.

7. Every thirty days the plaintiffs' counsel shall file a status letter advising me of the defendants' payments or efforts to pay, and of the defendants' efforts at curing the dearth of financial disclosure that has led to this state of affairs.

8. Nothing in this Order or the Judgment entered pursuant to this Order shall be construed to prevent the plaintiffs from pursuing further remedies for contempt of this or previous Orders, or in aid of judgment.

9. The plaintiffs' counsel will ensure that prompt service of this Order is made in person, by electronic mailing, and by regular and certified mail, return receipt requested, on Mr. Redding, and on the other entity defendants through service on Mr. Redding. Regardless of how Mr. Redding or his various entities choose to couch his relationship with the various defendants, I find that he is the responsible party who may accept service of process on behalf of all the other defendants in this case, and this status shall not cease until he has complied with his obligations, in full.

10. Plaintiffs' counsel shall file a certificate of service on or before July 19, 2019, the purpose of which is to document that Mr. Redding has received notice of this Order, in some fashion, before July 23, 2019. The certificate shall be filed on July 19, 2019, regardless of whether every form of service has been effected. A supplemental certificate shall be filed when all manner of service has been completed.

                                                **BY THE COURT:**

                                        *s/Richard A. Lloret*
                                        **RICHARD A. LLORET**
                                        **U.S. MAGISTRATE JUDGE**